This next case is 4-15-0151, Anthony Tummelson v. Elizabeth White. For the appellant is Attorney David Moore. And for the appellee, is it Attorney Michael Tagg? Yes, correct. All right, thank you, counsel. Mr. Moore, are you ready to proceed? I am, Your Honor. Thank you. You may. May it please the Court. Thank you, counsel. The issue, from our perspective, that this Court needs to determine is whether or not the trial court erred in determining that a fiduciary relationship existed between the parties justifying the imposition of a constructive trust. I don't believe that there's any question that this was not a fiduciary relationship as a matter of law. I believe the trial court made the determination that a fiduciary relationship existed as a matter of fact. Now, the plaintiff has the burden of proving that a fiduciary relationship existed as a matter of fact by clear and convincing evidence. And I looked for case law defining that term, and quite frankly, there is none. I also looked to the Illinois Pattern Jury Instructions for guidance on that issue, and the Illinois Pattern Jury Instruction Committee determined that the term was not a reasonable, normally customary definition, so they would not provide us with any guidance in that. It's more than preponderance, but less than reasonable doubt. In this case, all that the plaintiff proved is that the parties lived together and they shared common expenses. There's no disparity in income. There's no disparity in education levels. There's no disparity in experience. Constructive trust can be utilized to prevent unjust enrichment where one party takes advantage of another party. In this case, it was clearly disclosed between the parties that they were living together, that they shared expenses, that houses were purchased in my client's name alone. As such, there was no unjust enrichment. There's no fiduciary relationship existing between the parties justifying the imposition of a constructive trust. Even if this court was to determine that there was a fiduciary relationship between the parties, in order for constructive trust to be imposed, unjust enrichment must occur. Unjust enrichment has not occurred. In this case, the house is underwater. My client has lost money as a result of this. Therefore, we would ask the court to reverse the trial court's judgment and enter judgment in the defendant's favor. Thank you. Thank you, counsel. Mr. Tagg. May it please the court, counsel. At the trial, the defendant wished to characterize the relationship of roommate or tenant. And the trial court didn't go for that because the trial court noted that there were numerous things that were presented at the trial that my client, the plaintiff, took his money from employment, put it in a common joint account that the defendant had control of, and the defendant then paid expenses from that, including household expenses, utilities, mortgage payments for the house. My client co-signed a second mortgage when the house on Cleveland was done. My client put money into the purchase of the property on Cleveland, all based upon his testimony that the discussions between the parties were this is for us, this is a family unit. The plaintiff would help care for the defendant's special needs daughter. They bought the house on Cleveland to help deal with the needs of the special needs daughter of the defendant. And I think one of the significant factors the trial judge noted was that the plaintiff would come to the family functions of the trial judge to find a note for the defendant's son and some money for tuition for one of the defendant's children was taken from this joint account. So the trial judge... When he makes these deposits into the joint account, why is it a matter of caution that those be viewed as gifts? Well the, I think that factually there could have been evidence presented to the trial judge that theoretically it could have been a gift. When he put the money in... Well in fact if you're a joint account holder and you deposit it to the joint account, is it by operation of law that viewed as a gift? I think there could be a presumption in many circumstances that it would be a gift, but it could also be a partnership. Or in our case we believe it could be indicative of a means towards the common fund, the equity fund. I think that what's significant is in the case law, particularly both I think the Kearse case and the Taino case cited in the briefs, that the relationship can be moral, social, domestic, or personal to create this relationship where there's something different than an actual gift or a loan. So when the judge looked at the totality of circumstances, he looked at the plaintiff turning over all of his money. And this would be different if he made $10,000 and put $2,000 in the joint account. But the evidence was he would take his paycheck, deposit everything into a common account for this domestic relationship, and then actually make these payments. So the trial court factually determined that this was not a landlord-tenant relationship. And based upon the credibility of the witnesses, that my client's description of the relationship was something much different than roommate. Was there any evidence in the record that the defendant ever told your client what he had to do with his money? I do not believe that there's anything in the record that she directed that he had to do anything specific with his money, or that there was anything that he couldn't do with his money. Well, wouldn't that indicate then that she's not exerting dominance over his financial circumstances? It would be a factor, no doubt. But in fact, he put the money into the joint account, trusting that they had this domestic relationship as a family unit. So the trust that he placed in her, in putting all of his funds into the common account and relying upon her to spend that in the best interest of the family, is what we believe creates the equivalent of the fiduciary relationship described in the cases. Counsel, before you sit down, in regards to the down payment for the Cleveland home, the parents provided a cashier's check for $7,000 in that regard. Is that right? I believe Mr. Tomelson secured money from his parents to put into that. I think that that's correct. Okay. It's difficult to tell from the copy in the record. Is there any dispute as to who the cashier's check was made payable to? Was it made payable to Mr. Tomelson, or was it made payable to C&C? I don't remember that. Okay. All right. Thank you. Thank you. Counsel, reply? All right. Thank you, Counsel. The case will be taken under advisement and a written decision shall issue.